491 F.2d 129
 UNITED STATES of America, Plaintiff-Appellee,
v.
John FANNON, Defendant-Appellant.
No. 73-2151, Summary Calendar.*
*Rule 18, 5 Cir.; see Isbell Enterprises, Inc.
v.
Citizens Casualty Company of New York et al., 5 Cir. 1970,
431 F.2d 409, PartI.
 United States Court of Appeals, Fifth Circuit.
 March 15, 1974.
 
 John Fannon, pro se.
 Robert W. Rust, U.S. Atty., Miami, Fla., for plaintiff-appellee.
 Before THORNBERRY, GOLDBERG and RONEY, Circuit Judges.
 THORNBERRY, Circuit Judge:
 
 
 1
 John Fannon was convicted after a jury trial of conspiring to import, actually importing, and possessing with intent to distribute some 2700 pounds of marihuana, in violation of 21 U.S.C. 963, 952, and 841(a)(1). He was sentenced to serve concurrently three five-year sentences, followed by a special parole period of two years. On this direct appeal, appellant presents us with nine claims of reversible error, only two of which warrant extended discussion.[1]
 
 
 2
 During the evening hours of November 29, 1972, appellant and several other men were observed by law enforcement officers unloading large bundles from a small boat on the Dynamite Rock at North Key Largo, Florida, and loading them into a Winnebago mobile camping vehicle. This surveillance was the culmination of a lengthy investigation of smuggling activity, an investigation which began the previous July and centered around Donald Troise and John Goodwin, two of the men charged in this conspiracy.[2] Late in the evening of the 29th, while the unloading and loading continued, customs agents abruptly announced their presence from nearby bushes and called upon the smugglers to submit to arrest. The invitation was first met with gunfire. But the officers soon arrested the appellant, and three others charged as co-conspirators were arrested the following day. At the time of appellant's arrest, 2707 pounds of marihuana were seized.
 
 
 3
 The evidence presented at trial left little doubt concerning the appellant's complicity. Fannon was identified as the man who had rented the Winnebago motor vehicle used in the smuggling attempt and who had leased a spot in a campground in North Key Largo. Special agents of the U.S. Customs Service testified about the elaborate surveillance of the parties suspected in this smuggling operation. One of the agents saw the appellant get into a Volkswagon belonging to Donald Troise the night of the 29th, drive away, return an hour later, and drive off again in the Winnebago. Another agent testified that he saw Fannon drive up to the shore in the camper and then load marihuana into the vehicle from the boat which had pulled ashore. When the officers announced their presence and attempted arrests, Fannon attempted to flee by diving into the water. He quickly reconsidered that course, however, came out of the water, and was arrested. All during the melee, a Dade County helicopter hovered above the scene lighting the area with a powerful searchlight. After a special agent informed Fannon of his rights, the appellant admitted that he had been hired to drive the Winnebago to deliver the marihuana.[3]
 
 
 4
 Brendin Reimbold, a co-defendant who pleaded guilty to the first court of the indictment, charging conspiracy, testified against Fannon. He described the conspiracy's genesis in Jamaica and the events leading up to the attempt to bring the contraband ashore. Although he testified that he had never seen Fannon before the eventful 29th, he did place Fannon at the scene of the crime and he described Fannon's loading of the camper with packages of marihuana.
 
 
 5
 In order to rebut this rather convincing evidence of guilt, Fannon took the stand in his own defense. He admitted knowing the co-conspirators Troise, Goodwin, and the captain of the ship which carried the marihuana from Jamaica to the Florida coast. He admitted renting the camper, traveling to the campground, and waiting at the dock at night for Troise and the ship. He admitted unloading the bundles of marihuana from the ship and loading them into the camper.
 
 
 6
 To explain this otherwise admitted criminal activity, Fannon testified that his actions were coerced by men in the ship carrying guns. His sole purpose, he claimed, in being at the dock was to bring in illegally poached lobsters. But at the dock, he claimed at trial, he was threatened with bodily injury when he momentarily refused to help with the smuggling. On cross examination, however, he admitted that he knew nothing about commercial fishing, or about storing fish, and that he had never worked in the fishing business in any manner. He further admitted that the Winnebago vehicle, which he claimed was to be used to transport the lobsters, had not been equipped for that purpose. He also admitted that he had been twice convicted for securities fraud. On this record appellant has not contended that the evidence was insufficient to prove his guilt beyond a reasonable doubt.
 
 
 7
 Nevertheless, appellant recognizes, as do we, that even the most guilty are entitled to a constitutionally fair determination of guilt. Appellant contends that this was denied him and directs our attention to the circumstances surrounding the testimony of Brendin Reimbold. Reimbold originally pleaded not guilty to all three counts in the indictment, but shortly before Fannon's trial, he changed his plea to one of guilt as to count I, the conspiracy charge, and the remaining two counts were dismissed. Fannon was not present in the courtroom when the district judge accepted Reimbold's plea of guilty, and Fannon was not aware of the terms of Reimbold's plea bargain. But Fannon's appointed counsel was present in the courtroom and was aware of the terms of the plea bargain because he was also Reimbold's appointed counsel. Fannon's interrelated objections are that none of the parties to his trial-- his attorney, the prosecutor, or the district judge-- ever disclosed to the jury the existence of plea bargaining negotiations with a key government witness, that his attorney labored under a conflict of interest, and that the resulting prejudice requires reversal.
 
 
 8
 Both common sense and formidable authority compel us to scrutinize the record with great care when such allegations are made, for they drive at the heart of the American system of criminal justice by challenging the faithfulness to duty of defense counsel, prosecutor, and judge.[4] It is true that defense counsel, the prosecutor, and the district judge were cognizant of Reimbold's position since each had a role in the plea bargaining. Only the jury was not aware of the existence or substance of the witness' plea bargain. Nevertheless, even if Reimbold's testimony could have been thoroughly impeached by the introduction of his plea bargain, there is no reasonable likelihood that this impeachment could have affected the verdict of the jury. Napue v. Illinois, 1969, 360 U.S. 264, 79 S.Ct. 1173, 3 L.Ed.2d 1217. Even if Reimbold had not testified at all, the evidence would have been more than sufficient for the jury to find the defendant guilty beyond a reasonable doubt. And thus any error in failing to apprise the jury of the plea bargain was harmless beyond a reasonable doubt. Harrington v. California, 1969, 395 U.S. 250, 89 S.Ct. 1726, 23 L.Ed.2d 284.
 
 
 9
 It is likewise clear that appellant has not demonstrated any actual conflict of interest. For once appellant took the stand and admitted the substance of Reimbold's testimony, defense counsel could gain nothing from impeaching Reimbold. Fannon has not alleged that he would not have testified had his attorney attempted to impeach Reimbold. Indeed, in his brief, appellant adheres to his defense of coercion.
 
 
 10
 Ordinarily prejudice will be assumed from the existence of a conflict, but, to be sure, a conflict will not be inferred from the mere fact of joint representation. Although an accused need not delineate the precise manner in which he has been prejudiced, there must be some showing of prejudice, however remote, or an actual, not theoretical, conflict before a reviewing court will find the dual representation constitutionally defective.[5]
 
 
 11
 While there was no prejudice or actual conflict of interest here, this case illustrates the dangers involved in dual representation. In cases such as appellant's, both defense counsel and the district judge should exercise the greatest care to determine whether joint appointment and representation is consistent with the attorney's duty to give his client untrammeled, unimpaired, and faithful assistance. Glasser v. United States, 1942, 315 U.S. 60, 62 S.Ct. 457, 86 L.Ed. 680; Holland v. Henderson, 5th Cir. 1973, 460 F.2d 978.
 
 
 12
 Our careful review of the record convinces us that Fannon's problem in this case had nothing to do with lack of effective representation or due process, but was derived from the simple fact that he knew, and his counsel knew, that the prosecution was in full possession of clear and admissible proof of his guilt. See United States v. Jones, 6th Cir. 1971, 436 F.2d 971, 972.
 
 The convictions are
 
 13
 Affirmed.
 
 
 
 [1]
 We have considered each of the following contentions and have found each of them to be without merit: that the district court erred in denying appellant's request for the services of an investigator; that the trial court improperly set appellant's bail; that the trial court ignored pre-trial defense motions; that the trial court ignored appellant's motions involving the grand jury proceedings; that the prosecution refused to supply Jencks Act material; that the trial court erred in admitting inculpatory statements by appellant into evidence; and that the trial court refused to charge the jury on a theory of defense
 
 
 [2]
 At the time of Fannon's trial, Goodwin had pleaded guilty to a conspiracy charge, and Troise had escaped from custody
 
 
 [3]
 Fannon contends that he was not given his Miranda warnings and that the confession was involuntary. After questioning the agent who testified to Fannon's confession, the district judge concluded that the agent had properly warned Fannon and that the confession was admissible. Fannon has presented us with no good reason for disturbing the district judge's determination
 
 
 [4]
 See Giglio v. United States, 1972, 405 U.S. 150, 92 S.Ct. 763, 31 L.Ed.2d 104; Glasser v. United States, 1942, 315 U.S. 60, 62 S.Ct. 457, 86 L.Ed. 680
 See also United States v. Tashman, 5th Cir. 1973, 478 F.2d 129; United States v. Smith, 5th Cir. 1973, 480 F.2d 664; United States v. Fontenot, 5th Cir. 1973, 483 F.2d 315; United States v. Cawley, 5th Cir. 1973, 481 F.2d 702, 706; Government of the Virgin Islands v. John, 3rd Cir. 1971, 447 F.2d 69, 74; Holland v. Henderson, 5th Cir. 1972, 460 F.2d 978.
 
 
 [5]
 United States v. Pinc, 5th Cir. 1971, 452 F.2d 507, 508; Baker v. Wainwright, 5th Cir. 1970, 422 F.2d 145, 148; White v. United States, 5th Cir. 1968, 396 F.2d 822, 824; United States v. DeBerry, 2nd Cir. 1973, 487 F.2d 448 (Nov. 7, 1973); Walker v. United States, 3rd Cir. 1970, 422 F.2d 374, 375, cert. denied, 399 U.S. 915, 90 S.Ct. 2219, 26 L.Ed.2d 573; United States v. Rundle, 3rd Cir. 1971, 442 F.2d 234; Manuel v. Salisbury, 6th Cir. 1971, 446 F.2d 453; Annot., 34 A.L.R.3d 470; Annot., 47 A.L.R. 3d 1431
 See also Austin v. Erickson, 8th Cir. 1973, 477 F.2d 620, 624; United States v. Gougis, 7th Cir. 1967, 374 F.2d 758, 761; Kaplan v. United States, 9th Cir. 1967, 375 F.2d 895, 898, cert. denied, 389 U.S. 839, 88 S.Ct. 67, 19 L.Ed.2d 103.