**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**Pedro L. ALVAREZ,**
**Defendant-Appellant.**

No. 77–5040.

United States Court of Appeals,
Fifth Circuit.

Sept. 28, 1978.

Bernard H. Dempsey, Jr., Tampa, Fla., for defendant-appellant.

William T. Moore, Jr., U. S. Atty., Augusta, Ga., Elizabeth C. Chalker, Asst. U. S. Atty., Savannah, Ga., for plaintiff-appellee.

Before HILL, RUBIN and VANCE, Circuit Judges.

JAMES C. HILL, Circuit Judge:

On July 28, 1976, Pedro L. Alvarez was found guilty by a jury on all counts of a three-count indictment charging him with (1) conspiracy to import, distribute and possess marijuana, (2) importation of marijuana, and (3) possession with intent to distribute marijuana. Appellant Alvarez urges that his trial attorney's simultaneous representation of both appellant and two codefendants who pled guilty and testified at his trial as government witnesses created a conflict of interest depriving him of his Sixth Amendment right to effective assistance of counsel and his Fifth Amendment due process right to a fair trial. Because we find appellant's claims meritorious, we reverse.

## I.

On the evening of August 23, 1975, near Sutherland's Bluff, McIntosh County, Georgia, federal customs agents observed a small boat leading a shrimp trawler toward Sapelo Sound without running lights. Parked nearby in a camping area, awaiting the arrival of the trawler to begin unloading, were seven pickup trucks and a van-type truck. The trawler proceeded along the shore and anchored next to a houseboat, at which time the unloading operation began. As federal officials moved into the area, numerous individuals were observed fleeing into the surrounding woods. Customs officials subsequently arrested twenty persons in the immediate vicinity of the load zone and seized approximately twenty-five thousand pounds of marijuana, although appellant was not one of those arrested.

On November 21, 1975, appellant and twenty-three codefendants were indicted for the offenses for which appellant was ultimately convicted. Of the twenty-four persons indicted, defendant's trial attorney, Arnold Levine,[1] represented sixteen. With the exception of two co-indictees against whom the indictment was eventually dismissed, all of Levine's clients originally pled guilty pursuant to a plea bargaining agreement which required them to testify against codefendant Nathan, who was represented by another attorney. Subsequently, five of those who originally pled guilty changed their pleas to *nolo contendere.*

The district judge accepted the pleas of all of Levine's clients except Alvarez. He fined and sentenced thirteen to various terms of imprisonment and dismissed the indictment as to two of them, with Frederic

---

1. New counsel has been substituted on appeal.

Altman and Albert Ellis receiving the most severe sentences of the thirteen.

After the district court refused to accept Alvarez' plea agreement, he withdrew his guilty plea and pled not guilty.

At appellant's trial Altman and Ellis were called to testify on behalf of the prosecution. Levine continued to represent Altman and Ellis at this time, and prior to the impanelling of the jury, argued a three-part motion on their behalf in which he contended that Altman and Ellis should not be required to testify because of their Fifth Amendment right against self-incrimination and that to require them to testify would violate the terms of their plea bargaining agreement. The government agreed to grant immunity and the district court therefore ordered them to testify.

In a colloquy between Levine and the court during the course of the trial, the district judge made it clear that if Levine sought to impeach the credibility of Altman and Ellis by showing that they were testifying under the terms of a plea bargaining agreement, then the prosecution would be entitled to show that Levine had represented them during the plea bargaining proceedings. Realizing the uncompromising position this placed him in, Levine moved to withdraw from the case, but the district court neither allowed nor required him to do so.[2] Consequently, Levine conducted a very limited cross-examination of Altman and Ellis in which he eschewed any mention of the circumstances surrounding their guilty pleas. The jury returned a verdict finding the appellant guilty on all three counts of the indictment. Following the denial of his motion for new trial and the imposition of sentence, this appeal was taken.

## II.

The Sixth Amendment guarantees a defendant in a federal criminal trial the right to "counsel reasonably likely to render *and rendering* reasonably effective assist-

ance." *MacKenna v. Ellis,* 280 F.2d 592, 599 (5th Cir. 1960), *modified,* 289 F.2d 928, *cert. denied,* 368 U.S. 877, 82 S.Ct. 121, 7 L.Ed.2d 78 (1961); *see also Herring v. Estelle,* 491 F.2d 125 (5th Cir. 1974). As the law has recognized for quite some time, though, the Sixth Amendment right to counsel implies much more than a minimum level of professional competence: even otherwise competent trial lawyers may sometimes find themselves in a position in which they are unable to render effective assistance of counsel. Thus, where defense counsel in a criminal trial represents one of several clients with conflicting interests, his effectiveness as a vigorous advocate for a particular defendant may be impaired by his commitment to other clients:

> [Effective representation] is lacking, however, if counsel, unknown to the accused and without his knowledgeable assent, is in a duplicitous position where his full talents—as a vigorous advocate having the single aim of acquittal by all means fair and honorable—are hobbled or fettered or restrained by commitments to others.

*Porter v. United States,* 298 F.2d 461, 463 (5th Cir. 1962). Undivided loyalty and fidelity of commitment is therefore the guiding principle in this important area of Sixth Amendment jurisprudence.

The guarantee of conflict-free counsel originated in *Glasser v. United States,* 315 U.S. 60, 62 S.Ct. 457, 86 L.Ed. 680 (1942), where the Supreme Court held that, in the context of simultaneous representation of codefendants, the Sixth Amendment contemplates that "assistance of counsel" be "untrammeled and unimpaired by a court order requiring that one lawyer shall simultaneously represent conflicting interests." 315 U.S. at 70, 62 S.Ct. at 465. Since *Glasser,* however, the courts have discovered a variety of situations, not limited to multiple representation of codefendants, in which attorneys have hazarded to represent conflicting interests. *See, e. g., Porter v. United*

---

2. The court, in fact, never ruled on Levine's motion to withdraw and Levine never insisted on a ruling.

States, 298 F.2d 461 (5th Cir. 1962) (conflict created by defense counsel's simultaneous representation of a potential witness who could establish the defense of entrapment, but who could not be called to testify without implicating himself); *MacKenna v. Ellis,* 280 F.2d 592 (5th Cir. 1960), *modified,* 289 F.2d 928, *cert. denied,* 368 U.S. 877, 82 S.Ct. 121, 7 L.Ed.2d 78 (1961) (conflict created by defense counsel's relationship with district attorney); *Castillo v. Estelle,* 504 F.2d 1243 (5th Cir. 1974) (conflict created by defense counsel's simultaneous representation of prosecution witness). *See generally* 34 A.L.R.3d 470 (1970). In each instance this court has insisted that counsel's allegiance to the defendant remain unaffected by competing obligations to other clients.

 Although an accused is entitled to counsel free of conflicting obligations, not every conflict in representation will be so egregious as to constitute a violation of the Sixth Amendment. For example, joint representation of codefendants is not a *per se* violation of the Sixth Amendment. *Foxworth v. Wainwright,* 516 F.2d 1072 (5th Cir. 1975); *United States v. Fannon,* 491 F.2d 129 (5th Cir.), *cert. denied,* 419 U.S. 1012, 95 S.Ct. 332, 42 L.Ed.2d 286 (1974). In other words, an actual, not merely hypothetical or speculative conflict must be demonstrated before it can be said that an accused has been deprived of effective assistance of counsel. *United States v. Fannon,* 491 F.2d 129 (5th Cir.), *cert. denied,* 419 U.S. 1012, 95 S.Ct. 332, 42 L.Ed.2d 286 (1974).

The government argues that this formulation should be the test for determining the effectiveness of *appointed* counsel, but that a different, more stringent test should be applied in the context of *retained* counsel. This argument is based on the language in some of our opinions[3] decided since *Fitzgerald v. Estelle,* 505 F.2d 1334 (5th Cir.), *cert. denied,* 422 U.S. 1011, 95 S.Ct. 2636, 45 L.Ed.2d 675 (1975).

 *Fitzgerald* constructed the conceptual framework within which Sixth Amendment claims were to be analyzed, while at the same time establishing the criteria by which such claims were to be judged when *retained* counsel is involved. The reason for the distinctions drawn in *Fitzgerald* between retained and appointed counsel is the requirement of state action imposed by the Fourteenth Amendment on all rights incorporated thereunder.[4] When the court appoints counsel for the defendant, state involvement is obvious, but when counsel is retained, the nexus with governmental action is not always so clear. *Fitzgerald* thus identified two situations involving retained counsel which satisfy the state action requirement. In the first instance, where a lawyer's ineffectiveness renders the trial fundamentally unfair, state action is present because the state's criminal justice system has failed and enforcement of the resultant judgment would violate due process, regardless of whether counsel is retained or appointed. In the second instance, where retained counsel is less than reasonably effective yet not so ineffective as to render the proceedings fundamentally unfair, requisite state involvement is established by showing:

. . . that some responsible state official connected with the criminal proceeding who could have remedied the conduct failed in his duty to accord justice to the accused. That the trial judge and the prosecutor have such a capacity and duty

---

3. "We thus pretermit any consideration of whether some additional showing is required to establish a constitutional violation when an actual conflict exists in joint representation by retained counsel." *United States v. Huntley,* 535 F.2d 1400, 1406 n.10 (5th Cir. 1976), *cert. denied,* 430 U.S. 929, 97 S.Ct. 1548, 51 L.Ed.2d 773 (1977).

"In this case we address solely the question whether it was error to appoint one attorney for three defendants, and to fail to terminate the joint representation when an actual conflict became apparent. Joint representation by retained counsel is a different question entirely." *Foxworth v. Wainwright,* 516 F.2d 1072, 1076 n.4 (5th Cir. 1975).

4. The Sixth Amendment guarantee of assistance of counsel was incorporated into the Fourteenth Amendment by *Gideon v. Wainwright,* 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963).

is unquestionable. Therefore, if the trial judge or the prosecutor can be shown to have actually known that a particular defendant is receiving *incompetent* representation and takes no remedial action, the state action requirement is satisfied. If they directly participate in the *incompetency* it is even more so. Furthermore, if the *incompetency* of a retained attorney's representation is so apparent that a reasonably attentive official of the state should have been aware of and could have corrected it then again the state action requirement is satisfied.

*Fitzgerald v. Estelle,* 505 F.2d at 1337 (emphasis added). The *Fitzgerald* analysis has subsequently been made applicable to claims arising out of federal proceedings. *United States v. Childs,* 571 F.2d 315 (5th Cir. 1978) (per curiam).[5]

Applying, as we must, the standards established by *Fitzgerald* for judging effectiveness-of-counsel claims, we find that conflict-of-interest cases such as the present one fall within the due process category of cases. Consequently, we hold that an attorney, whether retained or appointed, laboring under an actual conflict of interest in his representation of an accused fails to accord him effective assistance of counsel as guaranteed by the due process clause of the Fifth Amendment, and *a fortiori,* the Sixth Amendment. This is the clear import of our holdings in previous cases. In fact, in a footnote to this court's opinion in *Fitzgerald,* we specifically pointed to conflict-of-interest cases as illustrative of conduct which renders a trial fundamentally unfair. *Fitzgerald v. Estelle,* 505 F.2d at 1336 n.2. And even before our decision in *Fitzgerald,* we had recognized that a trial becomes fundamentally unfair when conducted by an attorney laboring under a conflict of interest, whether that attorney is court appointed or retained:

But where [a conflict of interest] has been allowed to occur, either through a calloused conscience of the attorney, or ignorance of the true facts by the Judge, the trial is not the fair one demanded by the Constitution. And this is so without regard to the presence or absence of any action of a strictly governmental nature which can be ascribed to the prosecution as the transgressing agency or imputed to the trial court on traditional notions of error on the judge's part.

*Porter v. United States,* 298 F.2d 461, 464 (5th Cir. 1962). Indeed, we have always considered the undivided loyalty of counsel as essential to due process.[6] *MacKenna v. Ellis,* 280 F.2d 592, 599 (5th Cir. 1960), *modified,* 289 F.2d 928, *cert. denied,* 368 U.S. 877, 82 S.Ct. 121, 7 L.Ed.2d 78 (1961); *Gravitt · v. United States,* 523 F.2d 1211, 1218 (5th Cir. 1975). Unlike *competency* of representation, where an attorney's conduct may fall anywhere along a continuum ranging from the incompetent to the superlative, conflict-laden representation is not susceptible of such fine gradations. Such

---

**5.** We interpret *Childs* as applying the same analytical framework established by *Fitzgerald* to "assistance of counsel" claims in federal trials. In analogizing to *Fitzgerald,* then, such a claim in federal court can be based on two independent constitutional provisions. First, the due process clause of the Fifth Amendment is violated whenever the performance of counsel, whether retained or appointed, is so deficient as to render the proceedings fundamentally unfair. Secondly, an accused's Sixth Amendment right to "assistance of counsel" is deprived when counsel renders less than reasonably effective assistance, and in the case of retained counsel, is accompanied by a showing "that some responsible state official connected with the criminal proceeding who could have remedied the conduct failed in his duty to accord justice to the accused." *Fitzgerald v. Estelle,* 505 F.2d at 1337. The statement in

*Childs* that a Sixth Amendment violation can be established by a showing of fundamental unfairness is but a necessary corollary of the general proposition that the Sixth Amendment covers a broader range of counsel errors than does the fundamental unfairness standard embodied in the concept of due process; nonetheless, *Childs* should not be interpreted so as to obscure the separate constitutional bases for assistance of counsel claims.

**6.** Although not specifically holding that an actual conflict of interest violates the due process clause, this court has nonetheless previously indicated, in very strong language, that such conflicts do impair the defendant's due process right to a fair trial. *See Alvarez v. Wainwright,* 522 F.2d 100, 105 (5th Cir. 1975).

representation is invidious, often escaping detection on review,[7] and is tantamount to a denial of counsel itself.

Having concluded that, in the conflict-of-interest category of cases, identical tests[8] measure the effectiveness of retained or appointed counsel, we now set out to ascertain whether appellant's counsel was operating under an actual conflict of interest stemming from the simultaneous representation of appellant and two principal prosecution witnesses.

We do not undertake to decide whether or not, when Mr. Levine's clients were bargaining for pleas of guilty or *nolo contendere,* he could vigorously and effectively represent each client, consistent with the interests of his other clients. At any rate, as soon as appellant's plea of guilty was rejected and it became apparent that Altman and Ellis were to be called to testify against appellant, then Levine was confronted with a glaring conflict of interest which pulled him in opposite directions. As witnesses for the government, Altman and Ellis, in order to fulfill their obligations under the plea bargaining agreement, would be expected to give incriminating testimony against appellant. Even though both Altman and Ellis had been sentenced prior to being called to testify, they would nonetheless be faced with a contempt citation should they refuse to testify and the possibility of a perjury conviction if they elected to change their story at trial. The only course of action consistent with their best interests would be to give the most credible testimony possible implicating Alvarez in the drug smuggling conspiracy, and Levine, acting as their attorney, would have to counsel and prepare them in that regard. On the other hand, as attorney for defendant Alvarez, Levine's single aim should have been the acquittal of his client by any fair and proper means. Thus, to serve appellant's cause effectively in preparing his defense, Levine was under a simultaneous duty to interview Altman and Ellis and prepare questions for trial with an eye toward discrediting their testimony. Even before the trial began, then, Levine wore two different hats, having as his dual objective the irreconcilable task of at once bolstering and discrediting the testimony of Altman and Ellis. It was at the point when Alvarez' plea was rejected that the conflict moved from the realm of the hypothetical to the actual. After appellant's plea was rejected, it became impossible for Levine to continue to represent Alvarez effectively if he also continued to counsel both Altman and Ellis. Levine should have moved to withdraw from the case at that point, but short of that, the trial court should have forced him to withdraw in the face of such an obvious conflict of interest.[9]

Although the conflict of interest confronting Levine prior to trial would provide a sufficient basis for our decision, the record shows that the actual, blatant conflict existing prior to trial grew to outrageous proportions as a result of what transpired during the trial itself.

Levine continued to represent Altman and Ellis at trial and argued a motion *in limine* to prevent them from testifying. Although unsuccessful in his efforts, Levine was nonetheless able to secure a grant of

---

7. "When there is a conflict of interest such as exists in this case, the prejudice may be subtle, even unconscious. It may elude detection on review. A reviewing court deals with a cold record, capable, perhaps, of exposing gross instances of incompetence but often giving no clue to the erosion of zeal which may ensue from divided loyalty." *Castillo v. Estelle,* 504 F.2d 1243, 1245 (5th Cir. 1974). "Joint representation of conflicting interests is suspect because of what it tends to prevent the attorney from doing. . . . The mere physical presence of an attorney does not fulfill the Sixth Amendment guarantee when the advocate's conflicting obligations has effectively sealed his lips on crucial matters." *Holloway v. Arkansas,* 435 U.S. 475, 489, 98 S.Ct. 1173, 1181, 55 L.Ed.2d 426 (1978).

8. While we explicitly rest our holding on the due process ground, we should also point out that both the prosecutor and the court below were fully apprised of the conflict of interest in this case.

9. The record discloses that both the court and the prosecutor were fully aware of the conflict of interest present in this case at least one month prior to trial.

immunity from the government under which Altman and Ellis were ordered to testify. During the course of the trial, Levine continued to advise them concerning the particulars of their testimony. In a discussion outside the presence of the jury, the trial judge made it clear that he would allow the prosecution to bring out on cross-examination the fact that Levine had represented Altman and Ellis during the negotiation of their guilty pleas should Levine try to impeach their credibility by exposing their plea bargaining agreements, which conditioned the favorable treatment they received upon their willingness to testify. Levine undoubtedly wished to discredit Altman and Ellis by showing that they had something to gain by testifying against Alvarez. His attempt to do this, however, would be seriously undermined, he knew, if it could be shown that he was the attorney who had negotiated those very pleas. Furthermore, the connection between Alvarez, Altman and Ellis would be all the more clear if it could be shown that Levine represented all three of them.[10] Fearing the specter of guilt by association, Levine conducted a very limited cross-examination of Altman and Ellis[11] in which he failed to expose the fact that their testimony was given pursuant to a deal they had made with the government.

■ On the basis of such overwhelming evidence,[12] we must conclude that Mr. Levine's representation was afflicted with an actual, identifiable conflict of interest which compromised his allegiance to Alvarez and denied him his constitutional right to effective assistance of counsel and a fair trial.

This conclusion is fully supported by our prior decisions dealing with conflict-of-interest situations. In *United States v. Mahar,* 550 F.2d 1005 (5th Cir. 1977), this court examined the propriety of the trial court's decision to disqualify *retained* counsel representing two codefendants, one of whom had decided to plead guilty and testify against the other. In upholding the trial court's decision to disqualify counsel, we recognized the conflict inherent in allowing defense counsel simultaneously to advise a codefendant who has agreed to testify for the government. A lawyer's role encompasses much more than simply advising a prospective witness to tell the truth; he must take additional steps to prepare him to testify. It is during this preparatory stage that defense counsel is torn between serving the witness' best interests in fully cooperating with the government in supplying credible testimony and the accused's obvious desire to discredit the witness' testimony. The Constitution does not countenance such divided loyalties. *See also Castillo v. Estelle,* 504 F.2d 1243 (5th Cir. 1974); *Porter v. United States,* 298 F.2d 461 (5th Cir. 1962).

The cases cited by the government do not require a different conclusion. Although most of them involve factual situations similar in some respects to the case at bar, they are all distinguishable in that they do not involve actual conflicts of interest. For example, in *United States v. Fannon,* 491 F.2d 129 (5th Cir.), *cert. denied,* 419 U.S. 1012, 95 S.Ct. 332, 42 L.Ed.2d 286 (1974), the codefendant, represented by defendant's counsel, pled guilty and testified at defendant's trial. When the defendant took the stand he admitted the substance of his co-

---

**10.** Realizing that he could no longer effectively represent appellant, Levine moved to withdraw from the case due to the untenable position caused by his conflict in interest. The trial court refused to allow or require him to do so. *See* Note 2, *supra.*

**11.** Levine's cross and recross examination of both Altman and Ellis cumulatively totaled six pages of transcript, as compared to a thorough and vigorous cross-examination of the other prosecution witnesses.

**12.** Although we do not rest our decision on this finding, there is some indication in the record of some lingering financial ties between Levine and Ellis. Ellis had apparently assigned his bond to Levine as payment for attorney's fees, but it had not yet been released by the trial court. There is some basis in the record to believe that Levine needed Ellis' personal testimony in order to obtain an earlier release of the bond; thus, Levine would not want to alienate Ellis for fear of losing his cooperation in this matter.

defendant's testimony. *Fannon* is unlike the case at bar, where the appellant was vigorously trying to contradict both Altman's and Ellis' testimony. *Giles v. United States,* 401 F.2d 531 (5th Cir. 1968), involved a situation where a codefendant pled guilty but did not testify at the accused's trial. In *Giles* the guilty plea operated to remove the chance of even a hypothetical conflict because it permitted the remaining defendant to place all of the blame on his former codefendant, whereas in the present case the guilty plea and the subsequent testimony of Altman and Ellis served to trigger the conflict of interest by placing Alvarez in an antagonistic position *vis-a-vis* his former codefendants. Similarly, in *United States v. James,* 505 F.2d 898 (5th Cir.), *cert. denied,* 421 U.S. 1000 (1975), the challenged counsel had *previously* represented the prosecution's witness on *unrelated* state charges; no actual conflict of interest existed. The remaining cases cited by the government [13] are also distinguishable for the same reason.

### III.

■ Next the government argues that, even conceding that there may be an actual conflict of interest in this case, reversal is nonetheless inappropriate because the appellant has failed to show he was prejudiced [14] by the conflict of interest at trial. Whatever the status of this issue may have been previously,[15] it was conclusively settled by the Supreme Court's opinion in *Holloway*

*v. Arkansas,* 435 U.S. 475, 98 S.Ct. 1173, 55 L.Ed.2d 426 (1978). In *Holloway* the court held that reversal is *automatic* whenever a trial court improperly requires joint representation over timely objection. Thus, once an actual conflict is demonstrated, a showing of specific prejudice is not necessary. The court reasoned that to hold otherwise would engage a reviewing court in unreliable and misguided speculation as to the amount of prejudice suffered by a particular defendant. An accused's constitutional right to effective representation of counsel is too precious to allow such imprecise calculations.

### IV.

■ Finally, the government argues that appellant waived his right to have conflict-free counsel by proceeding to trial fully aware of the conflict affecting his attorney's representation. We disagree. It is axiomatic that an accused may waive his right to conflict-free counsel, *Gray v. Estelle,* 574 F.2d 209, 213 (5th Cir. 1978), but such waivers are not to be lightly or casually inferred and must be knowingly and intelligently made. *United States v. Mahar,* 550 F.2d 1005 (5th Cir. 1977); *Baker v. Wainwright,* 422 F.2d 145, 149 (5th Cir.), *cert. denied,* 399 U.S. 927, 90 S.Ct. 2243, 26 L.Ed.2d 294 (1970). Moreover, where there is notice of an actual conflict of interest the trial judge is under a duty to advise the defendant of his right to separate, indepen-

---

13. *United States v. Rispo,* 460 F.2d 965 (3d Cir. 1972); *Nelson v. United States,* 415 F.2d 483 (5th Cir. 1969), *cert. denied,* 396 U.S. 1060, 90 S.Ct. 751, 24 L.Ed.2d 754 (1970); *Harrison v. United States,* 387 F.2d 614 (5th Cir. 1968).

14. Although we hold that a showing of prejudice is not necessary once an actual conflict of interest has been established, it is clear from the record that appellant was prejudiced at trial because his attorney was handcuffed in his ability to cross-examine Altman and Ellis effectively. *See* Note 9 and accompanying text, *supra.*

15. The government asserts that appellant must show both actual conflict and prejudice, but we believe the law in this circuit to be clear in holding that once an actual conflict of interest is established, a denial of effective assistance of

counsel exists without a specific showing of prejudice. *Gravitt v. United States,* 523 F.2d 1211, 1219 (5th Cir. 1975); *Foxworth v. Wainwright,* 516 F.2d 1072, 1077 n.7 (5th Cir. 1975); *United States v. Fannon,* 491 F.2d 129, 132 (5th Cir.), *cert. denied,* 419 U.S. 1012, 95 S.Ct. 332, 42 L.Ed.2d 286 (1974); *Baker v. Wainwright,* 422 F.2d 145, 149 (5th Cir.), *cert. denied,* 399 U.S. 927, 90 S.Ct. 2243, 26 L.Ed.2d 794 (1970). Some confusion in the area may have resulted from the seeming tendency of some decisions to use the terms "conflict" and "prejudice" interchangeably. *See, e. g., Haggard v. Alabama,* 550 F.2d 1019, 1022 (5th Cir. 1977); *United States v. Wayman,* 510 F.2d 1020, 1026 (5th Cir. 1975); *United States v. James,* 505 F.2d 898, 900 (5th Cir.), *cert. denied,* 421 U.S. 1000, 95 S.Ct. 2397, 44 L.Ed.2d 667 (1975).

dent counsel. *United States v. Boudreaux,* 502 F.2d 557 (5th Cir. 1974). In order for a defendant effectively to waive his right to conflict-free counsel, the trial judge should affirmatively participate in the waiver decision by eliciting a statement in narrative form from the defendant indicating that he fully understands the nature of the situation and has knowingly and intelligently made the decision to proceed with the challenged counsel. *United States v. Garcia,* 517 F.2d 272 (5th Cir. 1975); *see also Gray v. Estelle,* 574 F.2d 209, 213 (5th Cir. 1978); *United States v. Mahar,* 550 F.2d 1005 (5th Cir. 1978). It is abundantly clear from the record, however, that appellant did not waive his constitutional rights in the trial below.

To begin with, he was never informed of his right to separate counsel, notwithstanding the fact that the rest of his codefendants were so advised and the trial court had actual knowledge [16] of the conflict of interest lurking in this case. The trial judge made no effort to engage in the *Garcia* procedure for determining a waiver, apparently on the strength of his belief that no conflict of interest existed in this case. In fact, appellant's counsel specifically moved to withdraw from the case, but the trial court refused to grant his motion. In short, we find no waiver by appellant of his constitutional right to be represented by counsel free of conflicting interests; we refuse to charge laymen such as Alvarez with knowledge of the potential conflicts present in the joint representation setting; and we continue to insist, in the absence of a showing of bad faith, on a knowing and intelligent waiver—elicited by the trial judge, in accordance with the *Garcia* guidelines—of this important constitutional right.

## V.

We hold today that an accused, whether represented by appointed or retained counsel, is deprived of his Fifth and Sixth Amendment right to effective assistance of counsel, even in the absence of a showing of prejudice, when his attorney operates under an actual conflict of interest. We wish to emphasize two important limitations to our holding. First, an actual conflict of interest must always be demonstrated before an accused can establish a denial of effective assistance of counsel; hypothetical or speculative conflicts will not suffice. As we stated previously, we find an actual conflict of interest present in this case. Secondly, an accused may still waive his right to independent counsel by knowingly and intelligently proceeding with the challenged counsel or by intentionally, and in bad faith, pursuing a course of action deliberately designed to lay a groundwork for reversal. There is not even the slightest of suggestions that the present case involves that kind of conduct by the accused.

REVERSED.