**UNITED STATES of America**

v.

**RMI COMPANY, Crucible, Inc., Lawrence Aviation Industries, Inc., Martin Marietta Aluminum, Inc., J. William Price, Jr., Andrew N. Eshman, Robert E. Thomas, Gerald Cohen and George Herman.**

**Crim. A. No. 78–225.**

United States District Court,
W. D. Pennsylvania.

March 14, 1979.

Frank N. Bentkover, Special Trial Section, Antitrust Div., Justice Dept., Washington, D. C., for plaintiff.

James P. Markle, Pittsburgh, Pa., Robert A. Bicks, James J. Sabella, Breed, Abbott & Morgan, Haliburton Fales, II, Richard J. Holwell, White & Case, New York City, for RMI Co.

## OPINION

SNYDER, District Judge.

In this proceeding, we are required to consider the Government's Motion to Disqualify Counsel, including their respective law firms, from all further participation in these proceedings, or, in the alternative from further representation of three individuals, Nancy Beatty, Dorothy A. Smith, two secretaries employed by Defendant RMI Company, and Robert N. Geisinger, RMI's Secretary-Treasurer and Comptroller, each of whom the Government states it plans to call at trial. The Government also moves for disqualification of RMI's counsel from representing any other RMI employees who are later subpoenaed to be witnesses for the Government. In opposition of this Motion, counsel have filed affidavits by these individuals that they believe no conflict in fact exists among them, or between any of them and RMI, and asking counsel to oppose the Motion. Counsel have also filed their own affidavits that many RMI employees have been interviewed by them and that all were advised of their right to retain independent counsel, as RMI's former President, William J. Price, and former Vice President-Marketing, Andrew N. Eshman, had already done, and that, in fact, no conflict exists.

Concluding that counsel's joint representation of the Defendant RMI and its employees who will be called as Government witnesses creates a conflict of interest, such joint representation will be prohibited, and the Government's Motion will be granted to that extent.

## I.

The instant proceeding arises out of an indictment returned by a grand jury in the Western District of Pennsylvania charging a combination and conspiracy to fix, maintain, and stabilize artificially and at noncompetitive levels, titanium mill products[1] in violation of Section 1 of the Sherman Act, 15 U.S.C. § 1, as amended,[2] which is the statement of Congress' intent to extend its powers to the furthest reaches of the Commerce Clause to mandate a competitive business economy. *Gulf Oil Corp. v. Copp Paving Co., Inc.,* 419 U.S. 186, 95 S.Ct. 392, 42 L.Ed.2d 378 (1974); *U. S. v. Finis P. Ernest, Inc.,* 509 F.2d 1256 (7th Cir.), cert. denied 423 U.S. 893, 96 S.Ct. 191, 46 L.Ed.2d 124 (1975); *Rasmussen v. American Dairy Association,* 472 F.2d 517 (9th Cir. 1972), cert. denied 412 U.S. 950, 93 S.Ct. 3014, 37 L.Ed.2d 1003 (1973).

On August 24, 1978, a duly convened grand jury for the Western District of Pennsylvania was investigating possible antitrust violations and had subpoenaed the

1. Titanium mill products are defined as "T-bar, billet, plate, sheet and strip."

2. "Every contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce among the several States, or with foreign nations, is declared to be illegal . . . ."

918

individuals named above, who refused to testify, asserting their Fifth Amendment privilege against self-incrimination on the advice of counsel supplied to them by RMI. On application of the United States Attorney for a grant of immunity under the provisions of Title 18, United States Code §§ 6002 and 6003, they were directed to return to the grand jury that date to answer all questions propounded to them, as well as those in any subsequent proceeding or trial which might result from the grand jury inquiry.

An examination of the grand jury proceedings and the affidavits herein indicates that the named individuals were counseled throughout by the attorneys who persist in demanding a right to represent RMI and any of its employees, including the three individuals who have already been granted immunity and who, by affidavit, state they are willing to be questioned at trial, both on cross and direct examination, by counsel acting for RMI who at the same time represent each of them. Furthermore, James L. Daniell, President of RMI, has, by affidavit, indicated that he has read the Government's Motion and remains "convinced that its present counsel is best capable of preparing and presenting RMI's defense", and stated that "RMI wants its present counsel to continue to represent it." It is contended further that if the Government does not call the three individuals in the course of its case, "RMI will do so in its own defense." Thus, counsel assert in their brief that "[t]he Government's assertions of 'conflict' not only wars with the facts, but are without support in precedent." We emphasize that after the witnesses were called before the grand jury, on advice of present counsel, immunity was sought and after testifying, the witnesses reviewed the grand jury proceedings with counsel.

At the hearing held by this Court on the Government's Motion, neither the Government nor the Defendant's counsel requested a hearing be held to advise the named individuals of potential conflict of interest *inter sese* and to apprise them of their right to retain separate, independent counsel, although offered the opportunity by the Court. Counsel opposing the Motion took the position that the affidavits submitted on behalf of the named individuals showed that each had intelligently, knowingly, and voluntarily waived their Sixth Amendment constitutional right to effective counsel. The Government took the position that, as shown by the grand jury's record and indictment, and by the individuals' own affidavits, an intolerable conflict had been demonstrated.

The Government contends it is concerned about the effect that joint representation will have on its case. It points to *United States ex rel. Hart v. Davenport,* 478 F.2d 203, 210 (3rd Cir. 1973), where our Circuit stated:

"[U]pon a showing of a possible conflict of interest or prejudice, however remote, we will regard joint representation as constitutionally defective."

The court also quoted *In re Abrams,* 56 N.J. 271, 276, 266 A.2d 275, 278 (1970), where it was held:

"It is inherently wrong to represent both the employer and the employee if the employee's interest may, and the public interest will, be advanced by the employee's disclosure of his employer's criminal conduct."

478 F.2d at 209. The Government argues the conflict cannot be countenanced because "when placed in a situation where the employee will testify against the employer, they will be in a position adverse to one another, thus compromising both the Sixth Amendment rights of the employer and the rights of the employee to conflict free representation without fear of disclosure of confidences." They also point to *Pirillo v. Takiff,* 462 Pa. 511, 341 A.2d 896, *aff'd* 466 Pa. 187, 352 A.2d 11 (1975), *appeal dismissed and cert. denied* 423 U.S. 1083, 96 S.Ct. 873, 47 L.Ed.2d 94 (1976), holding that the Government may request judicial interference with private arrangements for multiple legal representation of witnesses called to testify before a grand jury where the multiple representation impedes the effectiveness of the grand jury investigation.

The Government argues that under the immediacy of trial, now scheduled for April 9, 1979, the principle involved in *Pirillo* is even more cogent, citing *In re Grand Jury Empaneled January 21, 1975,* 536 F.2d 1009 (3rd Cir. 1976).

Counsel for RMI insist on their right to represent all employees of RMI, and the individuals granted immunity as well, because RMI's defense will concede the truth of the witnesses' grand jury testimony. It becomes equally important, they argue, that counsel thoroughly familiar with the grand jury proceeding be able to aid witnesses in offering testimony that is consistent with their statements before the grand jury and that, therefore, they are the most competent counsel to represent these witnesses.

## II.

■ We are convinced that the prohibition against an attorney representing parties where a clear conflict of interest is apparent applies to the situation *sub judice.* Representation free from conflicting interests is an essential part of the Sixth Amendment right to effective assistance of counsel. *United States v. Bernstein,* 533 F.2d 775, 787 (2nd Cir.), *cert. denied* 429 U.S. 998, 97 S.Ct. 523, 50 L.Ed.2d 608 (1976); *United States ex rel. Hart v. Davenport, supra.*

In *Castillo v. Estelle,* 504 F.2d 1243, 1245 (5th Cir. 1974), Judge Wisdom found, as a matter of law, a conflict of interest which deprived a defendant of effective representation by counsel when the attorney, in an unrelated civil matter, represented the principal witness for the prosecution, stating:

"In these circumstances, counsel is placed in the equivocal position of having to cross-examine his own client as an adverse witness. His zeal in defense of his client the accused is thus counterpoised against solicitude for his client the witness. The risk of such ambivalence is something that no attorney should accept and that no court should countenance, much less create. We hold that the situation presented by the facts of this case is so inherently conducive to divided loyal-

ties as to amount to a denial of the right to effective representation essential to a fair trial.

We do not ascribe to Castillo's appointed attorney nor to the appointing judge improper motives, but they are chargeable with an error of judgment fatal to a fair trial.

The appellant has alleged specific instances of prejudice resulting from the conflicting loyalties of his counsel. We need not inquire into those allegations. When there is a conflict of interest such as exists in this case, the prejudice may be subtle, even unconscious. It may elude detection on review. A reviewing court deals with a cold record, capable, perhaps, of exposing gross instances of incompetence but often giving no clue to the erosion of zeal which may ensue from divided loyalty. Accordingly, where the conflict is real, as it is here, a denial of the right to effective representation exists, without a showing of specific prejudice." (Citations omitted)

So too in *United States v. Alvarez,* 580 F.2d 1251 (5th Cir. 1978), the court reversed a conviction on the three count indictment charging the defendant with (1) conspiracy to import, distribute and possess marijuana, (2) importation of marijuana, and (3) possession with intent to distribute marijuana. Alvarez urged that his trial attorney's simultaneous representation of himself and two codefendants, who pled guilty and testified at his trial as Government witnesses, created a conflict of interest depriving him of his Sixth Amendment right to effective assistance of counsel and his Fifth Amendment due process right to a fair trial. Judge Hill, for the court, made the following analysis, so clearly applicable here:

"We do not undertake to decide whether or not, when Mr. Levine's clients were bargaining for pleas of guilty or *nolo contendere,* he could vigorously and effectively represent each client, consistent with the interests of his other clients. At any rate, as soon as appellant's plea of guilty was rejected and it became apparent that Altman and Ellis were to be

called to testify against appellant, then Levine was confronted with a glaring conflict of interest which pulled him in opposite directions. As witnesses for the government, Altman and Ellis, in order to fulfill their obligations under the plea bargaining agreement, would be expected to give incriminating testimony against appellant. Even though both Altman and Ellis had been sentenced prior to being called to testify, they would nonetheless be faced with a contempt citation should they refuse to testify and the possibility of a perjury conviction if they elected to change their story at trial. The only course of action consistent with their best interests would be to give the most credible testimony possible implicating Alvarez in the drug smuggling conspiracy, and Levine, acting as their attorney, would have to counsel and prepare them in that regard. On the other hand, as attorney for defendant Alvarez, Levine's single aim should have been the acquittal of his client by any fair and proper means. Thus, to serve appellant's cause effectively in preparing his defense, Levine was under a simultaneous duty to interview Altman and Ellis and prepare questions for trial with an eye toward discrediting their testimony. Even before the trial began, then, Levine wore two different hats, having as his dual objective the irreconcilable task of at once bolstering and discrediting the testimony of Altman and Ellis. It was at the point when Alvarez' plea was rejected that the conflict moved from the realm of the hypothetical to the actual. After appellant's plea was rejected, it became impossible for Levine to continue to represent Alvarez effectively if he also continued to counsel both Altman and Ellis. Levine should have moved to withdraw from the case at that point, but short of that, the trial court should have forced him to withdraw in the face of such an obvious conflict of interest." (Footnote omitted).

580 F.2d at 1257.

Judge Stevens, now Justice Stevens, noted in *United States v. Jeffers,* 520 F.2d 1256, 1264, n.13 (9th Cir. 1975), *cert. denied* 423 U.S. 1066, 96 S.Ct. 805, 46 L.Ed.2d 656 (1976) (a case involving prior representation of a Government witness by a defense counsel in a criminal case) that "[t]he courts have frequently held that the existence of such [an ongoing] relationship [between defense counsel and a Government witness], with the inherent attendant hesitancy of counsel to completely cross-examine a current client, creates a very real conflict of interest and requires a mistrial if the conflict is disclosed, or a new trial, if the conflict is discovered only later."

"The Seventh Circuit stated in an earlier case that if a defense attorney was actually representing a bank at the same time he was acting as counsel for a defendant accused of robbing the same bank, the "situation [would be] so 'fraught with dangers of prejudice,' that a new trial would be required." *Zurita v. United States,* 410 F.2d 477, 480 (7th Cir. 1969).

Judge Teitelbaum of this Court, facing a problem similar to ours in the context of a grand jury investigation, disqualified an attorney from representing a witness who had been granted use immunity to testify when the attorney also represented her employer and others being investigated by the grand jury on the grounds that it was a "direct and immediate" conflict. *In re Grand Jury Investigation,* 436 F.Supp. 818, 821 (W.D.Pa.1977). The court was particularly sensitive to the conflict inherent in trying to negotiate a promise of non-prosecution for a witness that might result in testimony that would hurt his other client.

In *Stephens v. United States,* 453 F.Supp. 1202, 1209–10 (M.D.Fla.1978), defense counsel in a criminal case was also the attorney for a co-conspirator, the Government's chief witness against the defendant. Although the court stated that "[i]n the concurrent representation case the conflicting loyalties and the consequent risk of prejudice are manifest," it refused petitioner's motion to vacate sentence because, by the time of trial, defense counsel's relationship with the witness was "not truly an on-going one, but

a mere formality lacking true substance." The court specified two major Sixth Amendment concerns in this situation: (1) the ability of the attorney to effectively cross-examine the witness because of possible financial or personal interest in a continuing professional relationship with the witness, or the existence of privileged matters precluding some line of inquiry by the attorney, and (2) the ability of a reviewing court to assess with some degree of reliability the extent of prejudice resulting from the dual representation.

■ The previously named Government witnesses in this case were not targets or named co-defendants, but there remains a conflict of interest in the representation of immunized Government witnesses who are RMI employees and of the Defendant corporation. Counsel asserts that their defense against charges of criminal violations of the antitrust laws accepts the truth of the witnesses' grand jury testimony. This cannot alter the fact that the testimony of the named witnesses could be an important part of the prosecution's case and relate to material aspects of the alleged conspiracy as to involvement of officers and employees of RMI, and their instructions. This puts the witnesses and the corporation in an adversary posture.

There is also the continuing possibility that, in seeking counsel's advice in the course of testifying at trial, the witnesses will disclose information to counsel that will prevent probing of an important area on cross-examination for fear of jeopardizing the position of the witness. Counsel has assured the Court that it does not question the veracity of the witnesses, but it is unclear whether they will attack the credibility of those witnesses. More importantly, such tactical judgments cannot be left to counsel who have a professional obligation both to the Government witnesses and to the Defendant. In general, any prejudice that flows from committing judgments of

trial tactics to counsel with a professional obligation to some of the principal witnesses could be indetectable on appeal. See *United States ex rel. Sullivan v. Cuyler,* 593 F.2d 512 at 520 (3rd Cir. 1979). The Court is unaware of how counsel would harmonize their dual loyalties if faced with testimony by any of the three witnesses that is ambiguous and possibly contradicts his or her statements before the grand jury.

■ These witnesses and RMI have indicated a willingness to waive their right to effective assistance of counsel. A party's right to counsel of his own choosing, although rooted in the Sixth Amendment, is not absolute; nor is a court, when faced with an actual and serious conflict of interest on the part of counsel, obligated to accede to the party's waiver. *United States v. Dolan,* 570 F.2d 1177, 1182–4 (3rd Cir. 1978). *See In re Investigation Before February, 1977, Lynchburg Grand Jury,* 563 F.2d 652 (4th Cir. 1977) (public interest in an effective grand jury investigation overrides right of witness to counsel of his choice). We have serious doubts that an intelligent and voluntary waiver is possible here.[3] In *United States v. Garafola,* 428 F.Supp. 620 (D.N.J.1977), *aff'd sum nom. United States v. Dolan,* 570 F.2d 1177 (3rd Cir. 1978), the district court ordered defense counsel who represented a co-defendant, who entered a guilty plea in the same case and who was a potential government witness, to withdraw from representing either of the clients. Judge Lacey stated the following in that case:

"Respectfully it is submitted that the trial judge cannot conduct a meaningful inquiry. He does not know the case. He cannot know the facts or the inferences which may be fairly drawn from them. He is unaware of the quality of the witnesses and the trial strategy the government and the defendants will pursue. Nor can he inquire into the defense without violating defendant's fifth and sixth amendment rights; and this is so whether

---

**3.** The waiver must be an "intentional relinquishment or abandonment of a known right or privilege", *Johnson v. Zerbst,* 304 U.S. 458, 464, 58 S.Ct. 1019, 1023, 83 L.Ed. 1461, 1466

(1938), and made with "awareness of the relevant circumstances and likely consequences", *Brady v. United States,* 397 U.S. 742, 748, 90 S.Ct. 1463, 1469, 25 L.Ed.2d 747 (1970).

the interrogation is held in open court or *in camera*. He is restricted to imparting vaguely contoured, abstract advice on a doctrine as to which the lawyer then and there present has undoubtedly already advised his clients. Indeed, the attorney's words will have more meaning to the defendants because they are not empty abstractions but related to the facts of the case. He has already told his clients that there is no conflict in their interests. Thus, when the defendants answer the court's inquiry, they actually are relying upon the advice received from their lawyer. If he tells them there is no conflict and . that he can effectively represent them, how can their responses to the court be deemed to amount to a *Johnson v. Zerbst* waiver of their sixth amendment right to effective aid of counsel?" 428 F.Supp. at 624. In affirming the district court's determination in *Garafola,* the court of appeals said, "It may well be true, then, that in many cases the trial judge will not be in a position to accept a waiver of effective assistance of counsel." 570 F.2d at 1182.

■ In addition to its duty to protect the constitutional right to effective assistance of counsel, this Court also has a responsibility "to supervise the conduct of the members of its bar" and "to maintain public confidence in the legal profession." *Richardson v. Hamilton International Corp.,* 469 F.2d 1382, 1385 (3rd Cir. 1972), *cert. denied* 411 U.S. 986, 93 S.Ct. 2271, 36 .L.Ed.2d 964 (1973). All counsel practicing in this Court are obligated by Rule 22 of the Rules of the

United States District Court for the Western District of Pennsylvania to comply with the Code of Professional Responsibility promulgated by the Pennsylvania Supreme Court.[4] Canon 5 of the Code requires that a lawyer "exercise independent professional judgment on behalf of a client." [5]

The Court's concern for the effective representation of the Defendant, discussed above in the context of the Sixth Amendment, applies to this ethical obligation as well. The danger of prejudice to the witness is also relevant, and we must consider the possibility that counsel may, consciously or unconsciously, color their advice to the witnesses in order to benefit their other client, RMI.[6]

■ Attorneys also have an obligation under Canon 9 of the Code to "avoid even the appearance of professional impropriety." *Kramer v. Scientific Control Corp.,* 534 F.2d 1085, 1089 (3rd Cir.) *cert. denied* 429 U.S. 830, 97 S.Ct. 90, 50 L.Ed.2d 94 (1976). Even when an attorney's conduct is in fact ethical, if it appears improper to laymen, it tends to undermine public confidence in the legal system. Ethical Consideration 9–1 and 9–2. None of the disciplinary rules under Canon 9 deal specifically with the situation before the Court at this time, but the representation of a defendant in a criminal case and of a government witness who is also the defendant's employee could give such an appearance and is sufficient in itself to disqualify counsel from further representation of the witnesses. RMI is a large and important client of

4. Pennsylvania's Code of Professional Responsibility, promulgated in June, 1976, is included in 42 Pa.C.S.A. and has the force of statutory rules of conduct for lawyers. *Slater v. Rimar, Inc.,* 462 Pa. 138, 338 A.2d 584 (1975).

5. Disciplinary Rule 5–105 provides in part:
   "(B) A lawyer shall not continue multiple employment if the exercise of his independent professional judgment in behalf of a client will be or is likely to be adversely affected by his representation of another client, or if it would be likely to involve him in representing differing interests, except to the extent permitted under Disciplinary Rule 5-·105(C).
   (C) In the situations covered by Disciplinary Rule 5–105(A) and (B), a lawyer may represent

multiple clients *if it is obvious that he can adequately represent the interest of each* and if each consents to the representation after full disclosure of the possible effect of such representation on the exercise of his independent professional judgment on behalf of each." (Emphasis added)

6. Judge Teitelbaum questioned whether a valid waiver can be obtained from a witness who is being represented by her employer's defense attorney and knows that such a request for independent counsel may antagonize him. *In re Grand Jury Investigation,* 436 F.Supp. 818 (W.D.Pa.1977).

counsel's; a desire to sustain a continuing professional relationship with RMI would be a natural and understandable one. Dual representation in this case might raise public concern that counsel are in a position to influence the Government witnesses in order to serve the interests of their financially more important client by concealing violations of the antitrust laws, to the detriment of the witnesses and the public interest in full disclosure of any criminal conduct by the Defendant. The New Jersey Supreme Court held in *In re Abrams, supra,* that there is an inherent conflict in representing a criminal defendant while receiving the fee from the defendant's employer, whose criminal activity might be disclosed by the employee's testimony, and that the conflict is a violation of professional ethics flowing from the appearance of impropriety, stating:

"[A] direct understanding with the employer [that the employer will pay his employee's attorney's fee] will likely weaken the attorney's resolve to serve exclusively the interest of his client, no matter what the attorney may himself think. And even if the attorney's devotion to his client was not in fact diminished, still the arrangement may suggest to others that it was. Appearances too are a matter of ethical concern, for the public has an interest in the repute of the legal profession."

266 A.2d at 278.

A court may restrain conduct which it feels may develop into a breach of ethics; it "is not bound to sit back and wait for a probability to ripen into a certainty." *Pirillo v. Takiff, supra.* We are concerned that the dual representation here presents a grave risk of violation of the Code's prohibition of conflicts of interest and of conduct that gives rise to the appearance of impropriety. Under such circumstances, the court may disqualify an attorney from the dual representation. *United States v. Dolan, supra,* 570 F.2d at 1184; *Richardson v. Hamilton International Corp., supra,* 469 F.2d at 1385-6.

III.

Although we conclude that counsel should not continue representing any employees of RMI called as Government witnesses, we do not believe that counsel should be disqualified from representation of RMI. Where disqualification of defense counsel because of previous representation of a Government witness is asked for, the courts have examined the particular circumstances to determine whether counsel's undivided loyalties reside with the defendant. The concerns are: (1) whether the lawyer's pecuniary interest in possible future business from the former client might discourage counsel from conducting a vigorous cross-examination that might embarrass the witness, and (2) whether the existence of privileged communications by the witness will lead to a breach of the lawyer-client privilege or will prevent the attorney from probing sensitive areas on cross-examination. *United States v. Jeffers, supra,* 520 F.2d at 1264. *See also United States v. Donatelli,* 484 F.2d 505 (1st Cir. 1973); *Stephens v. United States, supra,* 453 F.Supp. at 1202.

Counsel in this matter have a financial interest, both present and future, in representing RMI and not its employees. We add to these considerations the presumption that counsel will subordinate their pecuniary interest to their professional responsibility to RMI. The second factor is more difficult to assess. We have decided that simultaneous representation of RMI and its employees might prejudice RMI's rights and violate the Code of Professional Responsibility, if allowed to continue. The Court has been assured by counsel that no possible conflict of interest has so far arisen and that they have obtained no confidential information to date that would lead to a breach of any professional confidence or prevent them from pursuing any line of inquiry on cross-examination. We appreciate RMI's desire to be represented by attorneys who have performed to their satisfaction in regard to other legal matters, who have been involved in this case since its inception and are familiar with all of its

aspects, and who "know the operation of RMI's business and certain key personnel employed by RMI", which in the corporation's view "minimizes disruption of [RMI's] operations." (Affidavit of James L. Daniell)

As the Court did in *In re Grand Jury Empaneled January 21, 1975, supra,* we have examined the records of the grand jury proceeding and found an insufficient evidentiary basis for a "Draconian Order" to interfere with RMI's important right to choice of legal representation.

Referring again to *Stephens v. United States, supra,* and the concerns expressed by the court where representation of the witnesses had ceased at the time of trial, the court stated, as we here state, that:

. "The concurrent representation cases have dealt explicitly only with the first factor. Where the relationship is truly ongoing and the attorney is obviously interested in the continued representation of the witness, the inquiry need proceed no further. Counsel's divided loyalties may be presumed to be so intolerable that an effective cross-examination is impossible. Where, however, the attorney-client relationship between witness and counsel is not truly an ongoing one, but is a mere formality lacking true substance, it would be a mistake to *presume* that counsel's ability to cross-examine is significantly affected. Lacking interest or expectation in future business with the client/witness, the defense counsel should in most cases be able to act effectively as an advocate of the defendant. Such is the case here. At the time of the Orlando trial, Asinof's representation of Wells had effectively ended, he had no further interests financial or otherwise in any future representation of Wells, and he had intentionally shut-off all communication with Wells in preparation for Stephens' defense. Under these circumstances some factual basis for inferring that Asinof's cross-examination was ineffective because of the relationship with Wells should be required. There is simply no reason to presume from the nature of the relationship between Wells and Asinof at the time of the Orlando trial that Asinof's effectiveness as Stephens' advocate was necessarily compromised.

A similar conclusion is warranted with respect to the second factor—the existence of confidential information material to the defense. It cannot logically be inferred that counsel's ability to cross-examine is impaired merely because he may be in possession of privileged matters. There must be some basis in the record for concluding that the privileged information *in fact* precluded the defense attorney from inquiring into relevant matters. There is clearly no basis for such conclusion here, for Asinof testified at the court's evidentiary hearing on August 27, 1977 that his cross-examination of Wells was not hindered by his knowledge of privileged information. That testimony is unrefuted."

453 F.Supp. at 1210.

Therefore, for the reasons stated herein, James P. Markle, Esquire, Robert A. Bicks, Esquire, James J. Sabella, Esquire, Haliburton Fales, Esquire, Richard J. Howell, Esquire, and their respective law firms and legal staffs will be disqualified from further representation of Nancy Beatty, Dorothy A. Smith, and Robert N. Geisinger, or any other RMI employees called as Government witnesses. They will, however, be permitted to continue in the representation of the RMI Company, subject to a valid waiver of any claim of prejudice resulting from counsel's prior representation of the three named Government witnesses.

An appropriate Order will be entered.