James Edwin STEPHENS,
Petitioner-Appellant,

v.

UNITED STATES of America,
Respondent-Appellee.

No. 78-2637

Summary Calendar*.

United States Court of Appeals,
Fifth Circuit.

May 23, 1979.

Reber F. Boult, Jr., W. Bruce Maloy, Atlanta, Ga., for petitioner-appellant.

John J. Daley, Jr., U. S. Atty., Wilbur V. Chaney, Asst. U. S. Atty., Jacksonville, Fla., for respondent-appellee.

Before BROWN, Chief Judge, CLARK and VANCE, Circuit Judges.

JOHN R. BROWN, Chief Judge:

In this § 2255 motion to vacate, the petitioner, James Stephens, attacks his 1972 conviction for conspiracy to import, importation, and possession of marijuana on the ground that he was denied the effective assistance of counsel. The basis of his claim rests on his counsel's concurrent representation of the principal witness against him.[1] After an evidentiary hearing the District Judge denied relief in an extensive memorandum opinion. Because we believe that the District Judge erred in not applying the rule that prejudice need not be demonstrated after an actual conflict of interest has been established, we reverse.[2]

The facts are somewhat complex, but it is not necessary to go into them in great detail. It suffices that Stephens's retained trial counsel, Wesley Asinof, had also been retained to represent Bobby Wells, petitioner's confederate and co-indictee, on related charges.[3] Wells worked out a plea agreement with the Government whereby he

---

* Rule 18, 5 Cir.; see *Isbell Enterprises, Inc. v. Citizens Casualty Company of New York et al.,* 5 Cir., 1970, 431 F.2d 409, Part I.

1. The right to conflict-free counsel is guaranteed by the Sixth Amendment. *See Alvarez v. United States,* 5 Cir., 1978, 580 F.2d 1251, 1254-55. As we stated in *Porter v. United States,* 5 Cir., 1962, 298 F.2d 461, 463:

   The Constitution assures a defendant effective representation by counsel whether the attorney is one of his choosing or court-appointed. Such representation is lacking, however, if counsel, unknown to the accused and without his knowledgeable assent, is in a duplicitous position where his full talents—

as a vigorous advocate having the single aim of acquittal by all means fair and honorable—are hobbled or fettered or restrained by commitments to others.

2. Stephens also presents a claim that his trial and conviction violated the double jeopardy clause. We affirm the District Court's holding that this claim has no merit.

3. There were three indictments, two returned in Atlanta and one in Orlando. Asinof was formally retained by Wells only on the Atlanta charges, but the plea agreement Wells reached with Asinof's aid encompassed all three indictments. Asinof in effect represented Wells on the Orlando charges, one of which counts Wells

agreed to plead guilty to one count in each of three pending indictments in return for concurrent sentences of five years on each count. Asinof had assisted Wells in working out this plea agreement, though it appears that Wells had done much of his own bargaining and that Asinof's role had been a limited one.

Wells's guilty plea was entered and accepted prior to Stephens's trial. Sentencing was postponed until after the trial, however, and the testimony at the § 2255 hearing makes clear that the Government's recommendation of the promised concurrent sentences was dependent upon Wells's testifying in Stephens's trial. Asinof was apparently unaware that Wells had agreed to testify against Stephens, although he suspected as much.

Not surprisingly, Wells turned out to be the Government's star witness in Stephens's trial. Asinof cross-examined Wells at length in an effort to discredit him. When he began a detailed cross-examination into Wells's plea agreement and revealed that he had played a role in bringing it about, the District Court stopped Asinof and questioned him briefly about a possible conflict of interest. This was the first time that the Court had been made aware of Asinof's representation of Wells. Asinof told the Court that he had represented Wells on related charges, but that he was not currently acting as Wells's attorney.

However innocently made, Asinof's statement was not completely correct. As the District Court found in the § 2255 proceeding below, Asinof was still technically Wells's attorney. In fact, after Stephens's trial, Asinof appeared as Wells's attorney in the sentencing proceeding. The District Court found further that Asinof "most certainly knew during [Stephens's] trial that he would be attending [Wells's] sentencing hearing." Asinof's statement was not without some basis, however, as he had avoided any contact with Wells after the guilty plea had been entered.

The District Court found both that Asinof was operating under an actual conflict of interest and that Stephens had not waived the conflict. Neither of these findings are clearly erroneous. The conflict is apparent: in his role as Wells's attorney, Asinof was obligated to protect Wells's interest and to avoid jeopardizing the plea agreement; as Stephens's attorney, Asinof's responsibility was to make Wells appear as badly as possible and to thereby discredit him and his testimony. With respect to waiver, the District Judge correctly concluded that there was no evidence that Stephens formally and specifically waived his right to conflict-free counsel. *See United States v. Alvarez*, 5 Cir., 1978, 580 F.2d 1251, 1259–60.

The District Judge denied relief, however, on the ground that Stephens had not shown that he was prejudiced by the conflict. He recognized that the decisions of this and the Supreme Court have established that prejudice need not be shown once an actual conflict of interest has been demonstrated. *See, e. g., Holloway v. Arkansas*, 1978, 435 U.S. 475, 98 S.Ct. 1173, 55 L.Ed.2d 426; *United States v. Alvarez*, 5 Cir., 1978, 580 F.2d 1251, 1259. This rule applies in habeas proceedings as well as on direct review. *See, e. g., Castillo v. Estelle*, 5 Cir., 1974, 504 F.2d 1243; *Baker v. Wainwright*, 5 Cir., 1970, 422 F.2d 145, 149, *cert. denied*, 399 U.S. 927, 90 S.Ct. 2243, 26 L.Ed.2d 794. The rationale for this rule was explained by Judge Hill in *Alvarez*:

> [T]o hold otherwise would engage a reviewing court in unreliable and misguided speculation as to the amount of prejudice suffered by a particular defendant. An accused's constitutional right to effective representation is too precious to allow such imprecise calculations.

580 F.2d at 1259; see also *id.* at 1256, 1257 & n. 7.

The reason that the District Judge declined to apply the rule that prejudice need not be demonstrated was his finding that

---

pleaded guilty to in Atlanta in a Rule 20 proceeding. As noted below, Asinof represented Wells in the sentencing proceedings as well,

which disposed of all pending charges. The trial with which we are concerned was on the Orlando indictment.

"Asinof's representation of Wells had essentially come to an end before [Stephens's] trial." He then found an absence of prejudice, emphasizing that after Wells had entered his plea, Asinof directed his efforts exclusively to preparing a defense for Stephens and that Asinof conducted a vigorous cross-examination of Wells.

Our difference with the District Court rests on our perception that the law does not permit the kind of line-drawing that his analysis entails. Perhaps the most analogous case from this Court is the recent one of *United States v. Alvarez*, 5 Cir., 1978, 580 F.2d 1251, which was rendered after the District Court's decision below. In that case, defendant's counsel, Levine, had represented 16 of 24 indictees. Prior to trial all of his clients pleaded guilty, and the District Judge accepted the pleas of all save the defendant. He then sentenced 13 and dismissed the indictment as to two. The defendant Alvarez withdrew his plea and pleaded not guilty.

Altman and Ellis, the two clients of Levine who had received the most severe sentences, testified as prosecution witnesses in Alvarez's trial. Levine moved to withdraw as Alvarez's counsel, which motion the District Judge denied. Alvarez was found guilty on all counts. On appeal we reversed, stating:

[A]s soon as appellant's plea of guilty was rejected and it became apparent that Altman and Ellis were to be called to testify against appellant, then Levine was confronted with a glaring conflict of interest which pulled him in opposite directions. As witnesses for the government, Altman and Ellis, in order to fulfill their obligations under the plea bargaining agreement, would be expected to give incriminating testimony against appellant. Even though both Altman and Ellis had been sentenced prior to being called to testify, they would nonetheless be faced with a contempt citation should they refuse to testify and the possibility of a perjury conviction if they elected to change their story at trial. The only course of action consistent with their best interests would be to give the most credible testimony possible implicating Alvarez in the drug smuggling conspiracy, and Levine, acting as their attorney, would have to counsel and prepare them in that regard. On the other hand, as attorney for defendant Alvarez, Levine's single aim should have been the acquittal of his client by any fair and proper means. Thus, to serve appellant's cause effectively in preparing his defense, Levine was under a simultaneous duty to interview Altman and Ellis and prepare questions for trial with an eye toward discrediting their testimony. Even before the trial began, then, Levine wore two different hats, having as his dual objective the irreconcilable task of at once bolstering and discrediting the testimony of Altman and Ellis. It was at the point when Alvarez' plea was rejected that the conflict moved from the realm of the hypothetical to the actual. After appellant's plea was rejected, it became impossible for Levine to continue to represent Alvarez effectively if he also continued to counsel both Altman and Ellis. Levine should have moved to withdraw from the case at that point, but short of that, the trial court should have forced him to withdraw in the face of such an obvious conflict of interest.

580 F.2d at 1257.

The case before us differs from *Alvarez* in three respects only. The first is that defense counsel in *Alvarez* vigorously protested being required to represent the defendant and moved to withdraw. Here, on the other hand, Asinof did not inform the Court of the conflict and, when the fact of his representation of Wells came out on cross-examination, he misrepresented to the Judge the true circumstances. We think this a distinction without a difference. First, the trial judge was put on notice of a probable conflict when he learned of Asinof's representation of Wells. We intend no criticism of the trial judge, apparently the only person at the trial concerned at all about the conflict and who, in conducting a brief inquiry, was misinformed by Counselor Asinof. But we think Asinof's explana-

tion should have stimulated further inquiry, rather than putting an end to the matter. At the least, the Judge should have explained to Stephens the possible conflict and his rights under the law. Second, as the District Judge found below, the prosecutors were aware of the conflict, yet they did nothing to inform the Court of it or to correct Asinof's statement. Finally, we have held that representation by counsel laboring under an actual conflict of interest, whether counsel be retained or appointed, renders the trial "fundamentally unfair" such that the requisite governmental involvement is present whether or not a responsible official is aware of the conflict. See *Alvarez*, 580 F.2d at 1256. Long before the dynamic development of these concerns, we made this clear seventeen years ago in *Porter v. United States*, 5 Cir., 1962, 298 F.2d 461, 464:

> Of course such things as this should never happen, and the place to stop it is the professional conscience of the advocate involved. A Court may not countenance it and must, on the contrary, take effective action just as we are certain the careful Judge below would have done had the facts been known at or before the commencement of the criminal trial. But where this has been allowed to occur, either through a calloused conscience of the attorney, or ignorance of the true facts by the Judge, the trial is not the fair one demanded by the Constitution. And this is so without regard to the presence or absence of any action of a strictly governmental nature which can be ascribed to the prosecution as the transgressing agency or imputed to the trial court on traditional notions of error on the Judge's part.

The second difference between this case and *Alvarez* is that in *Alvarez*, the testifying witnesses had already been sentenced. This distinction, of course, points up the extreme seriousness of the conflict of interest in this case: whereas in *Alvarez* the consequences to the witnesses of not testi-

fying or of not testifying favorably for the prosecution were only the possibilities of a contempt citation or a perjury prosecution, here Wells's plea agreement would have been seriously jeopardized had he not testified or not testified satisfactorily. Indeed, there is competent testimony in the record that had Wells not testified for the Government, the prosecutor would have asked for 15 years rather than the agreed five.[4] This aspect of *Alvarez* also disposes of the District Judge's rationale for not applying the rule that prejudice need not be demonstrated — — in *Alvarez*, even more so than here, the bulk of counsel's work for his witness clients had already been done, yet we found that the conflicting duties owed them and the defendant nevertheless required the application of the rule.

The third respect in which this case differs from *Alvarez* is that counsel in *Alvarez* continued to actively represent and advise the witnesses during the trial and conducted only a very limited cross-examination of them, in keeping with what he saw as his ethical and professional duties. Here, the District Court found that Asinof cut off all communication with Wells after the plea agreement had been reached and conducted an extensive cross-examination of him. *Alvarez* itself, however, rejected this distinction as immaterial. The Court there stated that "the conflict of interest confronting [Alvarez's counsel] before trial would provide a sufficient basis for our decision," referring to the conflict created once Alvarez's plea was rejected and his counsel continued to represent the witnesses. Only then did the Court go on to discuss the "outrageous proportions" to which the conflict grew during the actual trial.

Moreover, this distinction goes more to prejudice than it does to the presence of an actual conflict. Here, Asinof owed conflicting duties to the defendant and a witness for the prosecution. That appearances indicate he ignored his duties to the witness in

---

4. An attorney testified in the original trial that Wells told him this several days before the trial began. This testimony was introduced at the § 2255 hearing and credited by the District Judge.

favor of those owed the defendant is irrelevant. Just as we do not require a showing of prejudice because cold records "[may give] no clue to the erosion of zeal which may ensue from divided loyalty," *Castillo v. Estelle,* 5 Cir., 1974, 504 F.2d 1243, 1245, so should we not require a showing that an attorney is aware of and respects his professional loyalties. The inquiry necessary to determine if he did or did not would be fraught with the same sort of difficulties that gave rise to the rule that no prejudice need be shown in the first place.

In these circumstances we hold that the District Court erred in requiring Stephens to demonstrate that he was prejudiced by the conflict of interest. Stephens was represented by an attorney with an actual, flagrant conflict of interest based on his concurrent representation of a witness for the prosecution to whom he owed the unfettered duty of complete, legitimate support, not the task of undermining and tearing down his acceptability. That prejudice may not be apparent from the record is not significant. The judgment must be reversed and the sentence vacated. Because of our affirmance of the District Court's denial of the double jeopardy claim, see note 2, *supra,* however, retrial is not barred.

AFFIRMED IN PART; REVERSED IN PART.