Nicholas THEODORE,
Petitioner-Appellee,

v.

The STATE OF NEW HAMPSHIRE,
Respondent-Appellant.

No. 79–1265.

United States Court of Appeals,
First Circuit.

Argued Nov. 5, 1979.

Decided Feb. 11, 1980.

Paul W. Hodes, Concord, N. H., with whom Thomas D. Rath, Atty. Gen., and Richard B. McNamara, Asst. Atty. Gen., Concord, N. H., were on brief, for respondent-appellant.

Richard J. Vita, Dorchester, Mass., on brief, for petitioner-appellee.

Before CAMPBELL and BOWNES, Circuit Judges, CLARKE,* District Judge.

BOWNES, Circuit Judge.

In this habeas corpus case, the State of New Hampshire (State) appeals the decision of the District Court for the District of New Hampshire that petitioner-appellee Nicholas Theodore was denied his sixth amendment right to effective assistance of counsel during his state trial. The district court held that Theodore was prejudiced because his attorney, David Killkelley, had represented a principal prosecution witness in an earlier trial arising out of the same incident.

The procedural history of the case and its attendant facts are straightforward. Theodore is a contractor from Lowell, Massachusetts. In July of 1974, he purchased an assignment of a conditional sales agreement from Robert P. Santis for an old farmhouse and land in Belmont, New Hampshire, for $32,500.[1] Theodore instructed Santis to raise the amount of fire insurance coverage to $42,500, and this was accomplished through a phone call from Theodore's office. Within one month, the house was found ablaze. The fire, which appeared to have been deliberately set, was extinguished before substantial damage was done. The local fire and police officials suspected that the arsonist would return to complete the job, so they kept a watch on the property. Their suspicions were confirmed three days later when they apprehended John Fedorchuk inside with a pile of wood shortly after midnight. Outside the house, the officials discovered a jug of kerosene, a bag of newspapers, and candles. They also stopped the vehicle which had dropped off Fedorchuk when it returned to pick him up. The occupants of the car were John Coyle and Edgar Lussier. All three men were employees of Theodore.

Fedorchuk was arrested and indicted for arson. Massachusetts counsel recommended that Fedorchuk hire New Hampshire Attorney Killkelley. Fedorchuk paid Killkelly his full fee prior to his trial. During the trial, Fedorchuk pleaded guilty and was sentenced to imprisonment for one to three years.

Theodore was indicted on two counts of conspiracy to commit arson with Fedorchuk and Coyle named as coconspirators. Because he fought extradition, his trial was delayed until 1977, by which time Fedorchuk had completed his sentence and was back in Lowell working for Theodore. On

---

* Of the Eastern District of Virginia, sitting by designation.

1. Santis entered into a conditional sales agreement with the owner of the property, Peter DeJaeger. Among the conditions of the agreement was the requirement that Santis obtain fire insurance on the property, which he did. The agreement provided that, if its conditions were not met, DeJaeger could void the contract. Theodore purchased an assignment of this conditional sales agreement from Santis.

January 12, 1977, Theodore himself filed an appearance in superior court requesting a continuance of his case until he could get enough money to hire Attorney Killkelley. He informed the court that Killkelley required a retainer fee of $5,000 up front and that "I have $1,500 now and forthcoming I will have the balance of the money to have attorney Killkelley represent me, who I want, who, I believe, will vindicate me in this matter." The court told Theodore that he might qualify for appointed counsel, but Theodore preferred a continuance explaining:

> Your Honor, with a little time, just a little time I know I can get the rest of the money up to have Mr. Killkelley represent me, and I have all the faith in the world in Mr. Killkelley.

The court asked Killkelley whether he intended to represent Theodore, and Killkelley responded that he was concerned about both the retainer fee and a possible conflict of interest because he had represented one of the codefendants. The court directed Theodore to complete a financial statement, set the trial date, and appointed Killkelley as counsel "if there is no conflict here." Killkelley stated that an upcoming criminal trial in another county was the only conflict he could perceive.

On the day before trial was scheduled to begin, Killkelley filed sixteen assorted motions. He presented four additional motions on the day of trial. The first heard by the court was Killkelley's motion to withdraw as counsel for Theodore. Killkelley told the court that he learned for the first time at the end of the previous week that Fedorchuk would be testifying against Theodore and that this presented "a conflict of interest with respect to the cross-examination of this witness, particularly in the trial of this case." Killkelley stated that he had contacted counsel in Massachusetts who had assured him that Fedorchuk had no objection to Killkelley's representation of Theodore. Killkelley also stated that he intended to get Fedorchuk's authorization in writing. The prosecutor told the court that he asked Fedorchuk via the sheriff's department if he objected to Killkelley's represen-

tation of Theodore and was told that there was none. The prosecutor also argued that there was no actual conflict of interest because Killkelley had not been in contact with Fedorchuk for quite some time and there was no longer an attorney-client relationship between the two.

The court denied Killkelley's motion to withdraw, noting that it understood that the motion was based on "any confidential communication there might have been" between Killkelley and Fedorchuk during the previous trial. The court also expressed its pique at this last minute attempt to withdraw by pointing out that Theodore was indicted in 1975, that at an earlier conference before the court there was nothing said about withdrawing, and that the twenty motions were all filed late.

The trial commenced on the following day. John Fedorchuk testified that the first arson attempt had been made by Coyle and that when Theodore learned that it had been bungled, he was extremely upset. Fedorchuk also testified that he had overheard Theodore tell Coyle: "It's got to be done right." Fedorchuk testified that he, Coyle, and Lussier drove up to Belmont, New Hampshire in an automobile rented by Theodore for the express purpose of burning the house. According to Fedorchuk, Coyle told him that the house was being burned to collect insurance money. He further testified that, after he was released on bail furnished by Theodore, he explained to Theodore what happened the second time and Theodore stated, "We're in trouble." Fedorchuk stated that he had no involvement in the first arson attempt. The prosecution then solicited from Fedorchuk the information that he was convicted and had served his sentence for his participation in the second arson attempt. When the prosecution moved to admit the record of Fedorchuk's conviction, Killkelley approached the bench and renewed his motion to withdraw. The court explicitly asked Killkelley: "What's come up new since the last time you made the motion?" A typographical error as to the date of the second arson attempt had confused Killkelley and led

him to believe that Fedorchuk was not being truthful. When the prosecution spotted the typographical error and cleared up Killkelley's misunderstanding, he then objected to the introduction of the records on the grounds of relevancy and the court ruled them inadmissible.

Before beginning cross-examination of Fedorchuk, Killkelley once more approached the bench and made a motion for a mistrial and for leave to withdraw as counsel. When the court asked him if he had something further to say, he replied: "I have nothing further to disclose to the Court. The record stands on its own." The court denied Killkelley's motion but allowed a short recess so that Killkelley could discuss the matter with Theodore. Killkelley then cross-examined Fedorchuk, bringing to the jury's attention the fact that Fedorchuk pleaded guilty to the arson charge, that no fire had actually been lit on the second try, that Fedorchuk was introduced to Theodore by Fedorchuk's probation officer, that Theodore did not accompany his three employees on the trip to Belmont, and that, although Fedorchuk had several discussions with law enforcement officials about his testimony, he was offered no promises or inducements to testify.

After the jury returned its verdict finding Theodore guilty on both counts, Killkelley filed a motion for a judgment notwithstanding the verdict or a new trial listing twenty-nine purportedly fatal trial errors. Fifth on the list was a charge that the trial court erred in denying the motion to withdraw. This motion was denied and an appeal was taken to the New Hampshire Supreme Court. The Supreme Court affirmed the conviction, rejecting Theodore's contention that he had been denied effective assistance of counsel.[2]

■ The New Hampshire Supreme Court followed this circuit's decision in *United States v. DiCarlo*, 575 F.2d 952 (1st Cir.), *cert. denied*, 439 U.S. 834, 99 S.Ct. 115, 58

L.Ed.2d 129 (1978), which discusses the burden on a defendant who alleges that he was denied effective assistance of counsel due to dual representation. *DiCarlo* held that "a real conflict of interest or a specific instance of prejudice must be shown." *Id.* at 957. Applying this test to the facts, the Supreme Court found the following factors persuasive in its decision to affirm: Fedorchuk had been convicted and had served his sentence at the time of Theodore's trial; there was no evidence that Killkelley was inhibited in his defense of Theodore; Fedorchuk had no objection when told Killkelley was to represent Theodore; there was no showing of actual prejudice; and Killkelley "vigorously cross-examined" Fedorchuk.

On October 28, 1978, Theodore filed a habeas corpus petition in the district court. The district court held an evidentiary hearing during which Fedorchuk and Killkelley testified. It issued a detailed opinion on February 8, 1979, finding that Theodore was denied effective assistance of counsel and ordering the State to retry Theodore unless the State wished to present evidence.[3] The State then filed a motion for reconsideration and a request for findings, but these were denied in a second opinion of the court, dated April 18, 1979. A week later, the State was afforded a hearing during which the prosecutor was the only witness. The district court issued its third and final order on May 8, 1979, to retry Theodore. Judgment was stayed pending the outcome of this appeal.

After a review of the entire record, we conclude that the district court erred in deciding that Killkelley's prior representation of Fedorchuk resulted in the denial of effective assistance of counsel for Theodore. While we agree with the district court as to the controlling case law, we disagree with its interpretation of the cases.

In its first opinion, the district court, like the New Hampshire Supreme Court, prop-

---

2.  392 A.2d 122 (N.H.1978).

3.  Due to a misunderstanding, the State was not prepared for a full evidentiary hearing, and the

court allowed the State's motion to be allowed the opportunity to present evidence later should the need arise.

erly set out the burden which Theodore bore: to establish either a real conflict of interest or a specific instance of prejudice. *United States v. DiCarlo, supra,* 575 F.2d at 957. However, the court deviated from the *DiCarlo* standard and based its decision on a finding that "the fact remains that '*arguably* (petitioner's) constitutional right to the effective assistance of counsel was violated.' *United States v. Jeffers, supra,* at 1266" (emphasis added).[4] Its decision appears to rest on a finding of possible prejudice because Killkelley did not, in the court's view, thoroughly cross-examine Fedorchuk. The district court drew this conclusion from Killkelley's testimony that he "did feel uneasy about cross-examining Mr. Fedorchuk," that the cross-examination took only three pages of transcript, and that Killkelley did not question Fedorchuk about his criminal record.

We do not share the district court's view that *United States v. Donatelli,* 484 F.2d 505 (1st Cir. 1973), is distinguishable from this case; we consider it pertinent and instructive. In *Donatelli,* defendant contended that he had been denied effective assistance of counsel because, prior to his trial, a key prosecution witness had twice conferred with defendant's attorney seeking legal representation. We rejected defendant's argument that his attorney was fettered in cross-examination of the witness because of possible confidential information: the transcript revealed an apparently vigorous cross-examination and at no time did the attorney indicate that he was precluded from pursuing a line of questioning. As here, defense counsel did not ask the witness whether he waived the attorney-client privilege. Our comment in *Donatelli* applies with equal force here. "In light of the total absence of any indication of prejudice, defendant cannot rely on speculative harm caused by speculative confidential information to show that he was deprived of his

constitutional rights at trial" (footnote omitted). *Id.* at 507. Killkelley's bald assertion during the hearing on his motion to withdraw that "it is my feeling that it presents a conflict of interest with respect to the cross-examination of the witness" did little to enlighten the trial court and did not meet the specificity requirement of *Donatelli.* The trial court is not obligated to rule on the basis of feelings. Killkelley renewed his plaint just prior to cross-examination of Fedorchuk, and the trial court again gave him an opportunity to explain. Killkelley simply maintained, "I have nothing further to disclose to the Court. The record stands on its own." As the record then stood, defense counsel had not come forth with a cogent reason why his cross-examination would be hampered. *See also United States v. Jeffers,* 520 F.2d 1256 (7th Cir. 1975), *cert. denied,* 423 U.S. 1066, 96 S.Ct. 805, 46 L.Ed.2d 656 (1976) (failure of counsel to indicate to the trial court the nature of the alleged confidential information led to the conclusion that effective cross-examination was not precluded by the fact that defense counsel's partner had represented prosecution witness).

When Killkelley was asked at the habeas corpus hearing whether cross-examination of Fedorchuk about the arson would have resulted in divulging confidential matters, he answered: "That is a difficult question to answer, because it is speculative, really. That situation could happen, yes." When pressed by the State on this issue, Killkelley was unable to give a more definite response, stating only that there was a "possible conflict." Killkelley acknowledged that at the time of Theodore's trial his contract with Fedorchuk had been fulfilled except for "some thought of the possibility of federal charges." It is significant that, even after the trial had ended, Killkelley could only conjecture as to the limitations on

4. The quoted language which the court relied on from *United States v. Jeffers,* 520 F.2d 1256 (7th Cir. 1975), *cert. denied,* 423 U.S. 1066, 96 S.Ct. 805, 46 L.Ed.2d 656 (1976), is taken out of context. It is borrowed from a portion of the opinion where the court discussed the effect of defense counsel's refusal to cross-examine a

prosecution witness whom he had previously represented. The court did not need to reach the issue of whether this amounted to the denial of effective assistance of counsel because it found that defendants waived their right to have the witness further cross-examined, hence the court's use of the word "arguably."

cross-examination without giving any specific ways in which he was hampered.

The second of the district court's opinions was written in response to the State's request for more specific findings. The court explained the premise of its earlier decision as follows:

> The trial court denied defense counsel's timely filed motion to withdraw without adequately exploring the view of the witness Fedorchuk as to being questioned by the counsel who had earlier represented him. The prejudicial effect of this "dual" representation manifested itself in defense counsel's brief and far from exhaustive cross-examination of the key prosecution witness.

This overlooks the fact that on the day just before the state trial was to begin, the court held a hearing on the motion to withdraw and was told by both the defense attorney and the prosecuting attorney that Fedorchuk had no objection to Killkelley representing Theodore. While it might have been more prudent to elicit either a written statement from Fedorchuk or an in-court statement from him prior to trial, we believe that, under these circumstances, the trial court's inquiry was adequate. Attorneys are officers of the court and a judge has the right, in most circumstances, to rely on their representations to him.

We also disagree with the district court's appraisal of Killkelley's cross-examination of Fedorchuk as "far from exhaustive." It is not the reviewing court's task to impose its view of what it believes would have been the most effective trial strategy and it is well recognized that, oftentimes, little or no cross-examination is the best tactic. In this case, the prosecution had already introduced the fact that Fedorchuk had been convicted for arson, so perhaps Killkelley decided that extensive questioning about Fedorchuk's criminal past would have little effect. Killkelley did obtain a concession from Fedorchuk that he had pleaded guilty to the arson charge, a clarification of his earlier direct testimony that he had been convicted. Killkelley also drew from Fedorchuk the fact that he had been intro-

duced to Theodore by Fedorchuk's probation officer.

In its third opinion, the district court reiterated that it was guided by neither *United States v. Donatelli, supra,* 484 F.2d 505, nor *United States v. Jeffers, supra,* 520 F.2d 1256, because in each, there was no longer a continuing relationship between the attorney and the prosecution witness. The court noted that in this case, although Killkelley testified that he had not spoken to Fedorchuk since the day he was sentenced, "it cannot be said that this alone conclusively established that the relationship had ended." The district court felt that it was the task of the trial court to make further inquiry to ascertain whether Killkelley's continued representation would be consonant with the sixth amendment. We believe the trial judge covered this at the hearing on Killkelley's motion to withdraw. The court heard Killkelley's generalized argument concerning his desire to withdraw, as well as the prosecutor's counter-argument. Both sides informed the court that Fedorchuk had no objection to Killkelley's representation of Theodore. Because this is a case involving dual representation, not joint representation, the danger of conflict is not as great, hence judicial scrutiny need not be as deep. *United States v. DiCarlo, supra,* 575 F.2d at 957.

■ The district court did not decide whether or not a conflict of interest existed at the time of Theodore's trial, but, before us, Theodore argues that there was such a conflict. The conflict existed, he contends, due to the ongoing relationship between Killkelley and Fedorchuk. Although we must pay special attention to allegations of this sort, *United States v. Donatelli, supra,* 484 F.2d at 506, we conclude that Theodore does not meet his burden of establishing that a conflict existed at trial. The facts are that Killkelley had represented Fedorchuk on an arson charge arising out of the same facts resulting in Theodore's indictment. At the time of Theodore's trial, however, Fedorchuk had fully severed his relationship with Killkelley. Killkelley had been paid in full in advance of Fedorchuk's

trial and the two had no dealings since the end of the case. This is not a situation like *Stephens v. United States,* 595 F.2d 1066 (5th Cir. 1979), where the star prosecution witness and the defendant were indicted for the same crime. The prosecution witness in *Stephens* pleaded guilty and his attorney, who also later represented the defendant, arranged it so that sentence would be imposed after his testimony against the defendant. The court found that the attorney owed loyalties to the defendant and to the prosecution witness resulting in "an actual flagrant conflict of interest." *Id.* at 1070. Killkelley was torn by no such division of loyalties. With the fee paid from the earlier case, it could not be said that Killkelley feared a loss of money. Killkelley himself testified that Fedorchuk was not a regular client, and that his contact with him had been limited to the single case. Fedorchuk also stated that he had not been in touch with Killkelley since his trial and plea. We conclude that Theodore has failed to establish that Killkelley had a conflict of interest at trial.

*Reversed.*